UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CAROL H.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 3:20cv508 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*.).

3. Since the alleged onset date of disability, March 6, 2015, the claimant has had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; hypertension; diabetes mellitus; congestive heart failure (CHF); status-post pacemaker implant; bilateral carpal tunnel syndrome (CTS); status-post right carpal tunnel release; and obesity. Beginning on the established onset date of disability, April 10, 2018, the claimant has had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; hypertension; diabetes mellitus; congestive heart failure (CHF); status-post pacemaker; bilateral carpal tunnel syndrome (CTS); status-post right carpal tunnel release; obesity; cervical radiculopathy; and polyneuropathy (20CFR 404.1520(c)).

4. Since March 6, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that prior to April 10, 2018, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could never climb ladders, ropes or scaffolds but could occasionally use ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant could frequently handle, finger, and feel with the bilateral upper extremities. The claimant could never reach overhead; but frequently reach in all other directions with the bilateral upper extremities.

6. After careful consideration of the entire record, I find that beginning on April 10, 2018, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can never climb ladders, ropes or scaffolds but can occasionally use ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid all exposure to unprotected heights and moving mechanical parts. The claimant can occasionally handle, finger, and feel with the bilateral upper extremities. The claimant cannot reach overhead; and frequently reach in all other directions with the bilateral upper extremities.

7. Prior to April 10, 2018, the claimant was capable of performing past relevant work as a secretary (DOT Code 201.362-030). This work did not require the

performance of work-related activities preluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. Beginning on April 10, 2018, the claimant's residual functional capacity has prevented the claimant from being able to perform past relevant work (20 CFR 404.1565).

9. The claimant was an individual closely approaching retirement age on April 10, 2018, the established disability onset date (20 CFR 404.1563).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

11. The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

12. Since April 10, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

13. The claimant was not disabled prior to April 10, 2018 (20 CFR 1520(f)) but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g)).

(Tr. 15- 22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits prior to April 10, 2018. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on March 1, 2021. On June 25, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on July 10, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

The record shows that Plaintiff was born in 1955 (Tr. 149). She completed one year of college and had worked as a secretary (Tr. 21, 170). She allegedly became disabled as of March 6, 2015 (Tr. 13), when she was 59 years old. She alleged that she was disabled by congestive heart failure, diabetes, interstitial cystitis, a defibrillator, and high blood pressure (Tr. 169). In late 2015, Plaintiff was diagnosed with heart problems (*see* Tr. 273 ("nonischemic cardiomyopathy")) that was treated with an implanted defibrillator (Tr. 271- 72). This resulted in "significantly" increased energy by March 2016 (Tr. 313). In March 2016 and January 2017, Plaintiff stated that she was "feeling well" (Tr. 262, 260). In March 2017, Dr. Arnaldo stated that Plaintiff "is stable from the cardiovascular standpoint. She has basically no symptoms. She is a responder to cardiac resynchronization therapy and will continue on the same management" (Tr. 309).

5

Plaintiff also had hypertension that was described as "adequately controlled" with medications (Tr. 295, 283-84, 266, 263, 261, 362), interstitial cystitis that was described as "[s]table, asymptomatic" (Tr. 327, 334, 368; *see* Tr. 362 ("On Nitrofurantoin suppression")), 569 ("On chronic antibiotic suppression")), and diabetes (*e.g.*, Tr. 286, 327 ("Managed [on medications]"), 334 (same), 368 (same), 373-74, 381). Plaintiff also had chronic kidney disease (*e.g.*, Tr. 327, 334, 368, 569). The treatment records did not mention any persistent functional limitations resulting from these conditions.

In November 2017, State agency physician Dr. Smartt opined that Plaintiff retained the ability to perform activities consistent with light work (as defined at 20 C.F.R. § 404.1567(b)) with occasional postural limitations (Tr. 78-80). In March 2018, State agency physician Dr. Sands concurred (Tr. 91-93).

On November 6, 2018, Dr. Ungar-Sargon opined that Plaintiff could lift/carry 10 pounds occasionally (Tr. 609); could not sit, stand, and walk for an 8-hour work day (*i.e.*, could stand for 2 hours, sit for 1 hour, walk for 1 hour, and must rest and elevate the feet the rest of the time); needed a cane to ambulate; could use her free hand to carry while using a cane (due to knee arthritis and his right foot being in a cast at the time of the evaluation) (Tr. 610); could do limited reaching; could never operate foot controls (Tr. 611); and could never climb/balance/stoop/kneel/crouch/crawl (Tr. 612) or tolerate any hazards (Tr. 613).

As detailed above, the ALJ found that, from March 6, 2015 through April 9, 2018, Plaintiff's impairments limited her to sedentary work with some postural and environmental limitations, including a limitation to no more than frequent handling, fingering, and feeling with both arms (Tr. 17). The ALJ also found that, as of April 10, 2018, Plaintiff had severe "cervical

6

radiculopathy" and "polyneuropathy" (Tr. 16) that further limited her to only occasional handling, fingering, and feeling with both arms (Tr. 20). Based on the testimony of a vocational expert, the ALJ found that, from March 6, 2015 through April 9, 2018, Plaintiff retained the ability to perform her past relevant work and was not disabled (Tr. 21). The ALJ also found that, as of April 10, 2018, Plaintiff could not perform her past relevant work or other work existing in significant numbers in the national economy and, therefore, was disabled within the meaning of the Act (Tr. 22). *See* 20 C.F.R. § 404.1520(a)(4)(iv, v).

Plaintiff disagrees with the ALJ's finding that she was not disabled prior to April 10, 2018, but she agrees that she was disabled as of that date. Plaintiff asserts that the ALJ's findings were unsupported by substantial evidence.

In support of remand, Plaintiff first argues that the ALJ failed to properly evaluate her symptoms and limitations prior to April 10, 2018. Plaintiff specifically takes issue with the ALJ's finding that, prior to April 10, 2018, Plaintiff could "frequently handle, finger, and feel with the bilateral upper extremities." In contrast, for the period after April 10, 2018, the ALJ found that Plaintiff could only "occasionally handle, finger, and feel with the bilateral upper extremities."

The record shows that these findings are supported by the evidence of Plaintiff's cardiac problems, problems with her hands, neck and back pain, diminished mobility due to her weight, and her blood sugar problems and gait issues. (Tr. 19-20). Additionally the opinions of Drs. Smartt and Sands found Plaintiff to be more functional than the ALJ ultimately found. (Tr. 78-80, 91-93). For the period after April 10, 2018, the ALJ found that Plaintiff had "cervical radiculopathy; and polyneuropathy" (Tr. 16). Thus, Plaintiff's ability to handle, finger, and feel with the bilateral upper extremities was more limited, as the ALJ found. In fact, Plaintiff had

7

noted that she had worsening numbness in her hands between March 2015 and April 2018, resulting in her seeing Dr. Ungar-Sargon (Tr. 39). The ALJ noted the evidence from Dr. Ungar-Sargon (Tr. 20-21). On April 10, 2018, Plaintiff first saw Dr. Ungar-Sargon for complaints of pain in, *inter alia*, her neck and hand (Tr. 616). Dr. Ungar-Sargon diagnosed tendinitis in the shoulder, carpal tunnel syndrome in both arms, and cervical disc problems (Tr. 619). On November 6, 2018, Dr. Ungar-Sargon opined that Plaintiff had limitations in handling, fingering, and feeling with either hand (Tr. 611). Plaintiff does not dispute the ALJ's findings as to this period. Considering the record, there is no basis for Plaintiff's contentions that the ALJ's findings as to Plaintiff's functional limitations from March 6, 2015 through April 9, 2018 were erroneous.

Next, Plaintiff makes various contentions regarding the ALJ's findings as to Plaintiff's allegations of subjectively disabling symptoms from March 6, 2015 through April 9, 2018. Symptoms are a claimant's subjective descriptions of her impairments. *See* 20 C.F.R. § 404.1502(i). The alleged symptoms are considered in the disability evaluation. 20 C.F.R. § 404.1529(a). Once the claimant establishes the existence of an impairment that could reasonably be expected to produce the alleged symptoms, then the intensity and persistence of the symptoms must be evaluated. 20 C.F.R. § 404.1529(c)(1). The ALJ's credibility finding on this point should not be disturbed as long as it has "some support in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001). The ALJ's credibility finding must be upheld unless it is "patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021); *see, e.g., Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989) (citing *Anderson v. Bowen*, 868 F.2d 921 (7th Cir. 1989); *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986), cert. denied, 479 U.S. 988 (1986)).

Here, Plaintiff had described pain and/or numbness in her back, hands, feet, and legs that

affected her ability to concentrate (Tr. 38-39). She testified that the pain and numbness in her hands and feet worsened since March 2015, which resulted in her seeing a neurologist (Dr. Ungar-Sargon) in 2018 (Tr. 39; *see* Tr. 616). It is undisputed, as the ALJ found, that Plaintiff had impairments that reasonably could have been expected to cause the alleged symptoms. (Tr. 19). However, the ALJ further found that Plaintiff's allegations regarding the intensity and persistence of her symptoms could not be taken at face value. (Tr. 19). The ALJ explained his reasons for this finding.

For example, the ALJ noted Plaintiff's daily activities (Tr. 19). These included doing household chores, taking care of her personal needs, visiting friends and family, caring for a friend who was undergoing chemotherapy, and playing golf (Tr. 19). Such activities tended to show that Plaintiff's symptoms were not as extreme as alleged. This was a valid consideration. 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities").

The ALJ also noted Plaintiff's statements to her health care providers (Tr. 19). These included a lack of complaints regarding her allegedly disabling symptoms, such as trouble concentrating and numbness in her hands and feet (Tr. 19). Plaintiff's own statements were a valid consideration. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including... your statements about your symptoms").

Similarly, the ALJ noted the lack of objective medical findings as to Plaintiff's allegedly disabling symptoms (Tr. 19). These included findings of normal attention (despite her claim of pain-related concentration problems) and normal gait (despite her alleged back and leg pain) (Tr. 19). The objective medical evidence was a valid consideration. 20 C.F.R. § 404.1529(c)(2)("We

must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled").

Finally, the ALJ observed that the opinions of Drs. Smartt and Sands were inconsistent with Plaintiff's allegations of disabling symptoms, as they had opined that Plaintiff could perform light work with postural limitations (Tr. 19). The medical opinion evidence was a valid consideration. 20 C.F.R. § 404.1529(c)(1) ("We also consider the medical opinions").

Contrary to Plaintiff's contentions, the ALJ did not apply a "fully supported" standard when evaluating Plaintiff's allegations of subjectively disabling symptoms. The ALJ stated that Plaintiff's allegations were "not fully supported" by the evidence (Tr. 19), but this was the ALJ's description of the evidence, not an evidentiary standard. *See Gedatus*, 994 F.3d at 900 (the ALJ's statement—that Plaintiff's symptoms were "not entirely consistent" with the evidence—was "a polite way to say the weight of the evidence did not support all… [of Plaintiff's] claims"). The issue before this Court is whether the evidence supported the ALJ's findings. *See, e.g., Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (stating that such boilerplate is meaningless only "if the ALJ does not offer more of an explanation for the purported inconsistencies. *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016)"); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("[t]he use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony"). As discussed above, the ALJ discussed the evidentiary bases for his findings.

Also, contrary to Plaintiff's contentions, the ALJ was not required to identify evidence supporting Plaintiff's symptoms and limitations or to explain why other evidence was less favorable than the evidence upon which the ALJ relied. *Gedatus*, 994 F.3d at 901 ("[If Plaintiff]

is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate. . . . And if she is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective."). Here, the ALJ identified the reasons and evidence supporting his credibility finding and nothing more is required.

Plaintiff also contends that activities are "often are not a convincing reason for disbelieving a claimant". However, a claimant's activities are, by regulation, a valid consideration. 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities"). Plaintiff's activities tended to show that her pain was not so debilitating as she alleged.

Plaintiff further contends that her abnormal medical findings outweighed the normal findings mentioned by the ALJ. However, Plaintiff's contention amounts to a request for this Court to reweigh the evidence based on Plaintiff's alternative interpretation; such reweighing is proscribed. Moreover, to the extent that Plaintiff disagrees with the ALJ's summarizing of the evidence, summaries are necessarily "partial and selective" and need not mention every detail. *Gedatu*s, 994 F.3d at 901. An ALJ's decision need only be supported by substantial evidence and contain a logical bridge between the evidence and the conclusions. *Id*.

As Plaintiff has failed to show that the ALJ's findings as to her allegations of subjective disability were unsupported and "patently wrong", there is no basis for remand.

Next, Plaintiff argues that the ALJ failed to consider all of her medical conditions, because he did not find that her interstitial cystitis, stage three chronic kidney disease, or hypertension were severe. However, as the Commissioner points out, Plaintiff has failed to

11

identify any medical evidence of functional limitations. *See Gedatus*, 994 F.3d at 905 ("[Plaintiff] has not pointed to any medical opinion or evidence to show any tremors caused any specific limitations"); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations… because he hypothesizes none" and "the medical record does not support any"). Plaintiff argues that the ALJ was required to consider her symptoms of interstitial cystitis, but she does not identify any evidence of such additional symptoms, and, notwithstanding, the ALJ did consider Plaintiff's symptoms overall, as discussed *supra*. Plaintiff failed to identify medical evidence of the functional limitations that she claims the ALJ ignored.

Plaintiff also argues that the ALJ failed to properly consider Dr. Ungar-Sargon's opinion. The ALJ explained that he found that opinion "not persuasive" because it was unsupported by and inconsistent with the record evidence (Tr. 20). *See* 20 C.F.R. § 404.1520c. Specifically, Dr. Ungar-Sargon's opinion (Tr. 609-15 (dated November 6, 2018)) was given when Plaintiff was undisputedly disabled (Tr. 22 (disabled as of April 10, 2018)). Although Dr. Ungar-Sargon opined that Plaintiff's functional limitations had existed since March 6, 2015 (Tr. 614), this was directly contradicted by Dr. Ungar-Sargon's explicit reliance on recent and/or temporary conditions as bases for his opinion (*see, e.g.*, Tr. 609 (attributing lifting/carrying limitations to and EMG and CT scan), 610 (attributing sitting/standing/walking limitations to a fractured right foot that was "in cast")). Dr. Ungar-Sargon's opinion did not reliably establish disabling functional limitations from March 6, 2015 through April 9, 2018.

Next, Plaintiff argues that the ALJ's vocational findings are erroneous and not supported

by substantial evidence. The ALJ made a finding as to Plaintiff's functional limitations (*i.e.*, Plaintiff's residual functional capacity or "RFC") (Tr. 17). Based on the testimony of a vocational expert, the ALJ then made a finding as to the demands of Plaintiff's past relevant work (as a secretary) (Tr. 21 ("This job was identified by the vocational expert as one that is typically performed at the skilled, sedentary level, as per the Dictionary of Occupational Titles ("DOT") but she performed it at the skilled, medium level")). Finally, the ALJ found that Plaintiff's functional limitations were incompatible with Plaintiff's past relevant work, as that work is generally performed (Tr. 21). There is no error in the ALJ's analysis and his findings are supported by substantial evidence.

Plaintiff also makes contentions about the ALJ's findings as to her ability to perform her past relevant work and as to her functional limitations. Plaintiff contends that the ALJ's finding as to Plaintiff's ability to perform her past relevant work does "not provide enough insight into the ALJ's reasoning or thought process to permit meaningful review". Specifically, Plaintiff argues that the ALJ didn't ask about the possibility that her past work was a "composite" job (i.e., jobs that "have significant elements of two or more occupations," per SSR 82-61); that the ALJ "unquestioningly accepted the VE's testimony," and that the ALJ didn't ask "whether her job duties changed over the years or whether she performed the same job functions for the entire time". However, Plaintiff's arguments are unavailing.

It was Plaintiff's burden to establish an inability to perform her past relevant work. *See, e.g., Arbogast v. Bowen,* 860 F.2d 1400, 1403 (7th Cir. 1988) ("The claimant bears the burden of establishing that she is unable to return to her past relevant work"). An ALJ may rely on a vocational expert's testimony regarding past relevant work. *See, e.g., Jens v. Barnhart*, 347 F.3d

209, 213 (7th Cir. 2003) (upholding the ALJ's reliance on a vocational expert's testimony as to past relevant work). And a claimant is free to question the VE's testimony. *See, e.g., McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) (stating that the VE's reasoning must be explained "if the claimant challenges the foundation of the vocational expert's opinions"). It is presumed that a claimant who was represented by counsel made her strongest case before the ALJ. *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

Here, the ALJ relied on the vocational expert's testimony, which did not note any of the complications now asserted by Plaintiff. Plaintiff had testified as to the nature of her past relevant work as a secretary (Tr. 35-36, 42-45). Plaintiff did not question the vocational expert as to any of these now-asserted complications, and Plaintiff is presumed to have made her best case before the ALJ. Notably, despite the asserted complications, Plaintiff has not provided any evidence or explanation—to the ALJ, the Appeals Council, or this Court—of how her past work was a "composite" job, how her past job materially changed over the years, or how the ALJ improperly relied on the vocational expert's testimony. Clearly, Plaintiff has not carried her burden of proving an inability to perform her past relevant work.

Plaintiff also contends that the ALJ's findings as to her functional limitations were wrong. Plaintiff asserts that she had various impairments and functional limitations, but Plaintiff's assertions are based on her own, alternative interpretations of the evidence. Plaintiff asserts that the ALJ "believed" that Plaintiff's condition worsened "simply because she had testing in April 2018". Yet Plaintiff herself testified that the numbness in her hands and feet had worsened between March 2015 and April 2018, culminating in seeing a neurologist (Dr. Ungar-Sargon) in

April 2018 (Tr. 39; *see* Tr. 616). Plaintiff also asserted carpal tunnel surgery, poorly controlled diabetes, nerve damage, mental functional limitations, and an inability to work a 40-hour workweek. Yet Plaintiff failed to establish any resulting functional limitations beyond those already found by the ALJ. There was no medical opinion evidence of greater limitations (other than Dr. Ungar-Sargon's, which the ALJ discounted, as discussed *supra*). Plaintiff's unsupported assertions and alternative interpretations are insufficient to invalidate the ALJ's findings and the evidence on which they were based.

Plaintiff has failed to carry her burden of establishing an inability to perform her past relevant work from March 6, 2015 through April 10, 2018. Likewise, she has failed to show that the ALJ's findings as to her functional limitations were unsupported by substantial evidence during that period. Accordingly, the Decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: July 16, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court